FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

99 FEB 23  PM 12: 15

U.S. DISTRICT COURT
N.D. OF ALABAMA

JUDY SMITH,                          }
                                     }
        Plaintiff,                   }
                                     }
v.                                   }          CASE NO. CV 97-JEO-508-E
                                     }
SUPERVALU INC.,                      }
                                     }
        Defendant.                   }
                                     }

ENTERED

FEB 2 3 1999

## MEMORANDUM OPINION

Before the court is the defendant's Motion for Summary Judgment.  Upon

consideration of the record, the submissions of the parties and the relevant law, the court is

of the opinion that the defendant's motion is due to be granted.

## FACTUAL SUMMARY

In her complaint, the plaintiff alleges that the defendant violated the provisions of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, by subjecting her to

hostile work environment sexual harassment, paying her less than her male counterparts and

failing to promote her to one of three different positions.  She seeks monetary and injunctive

relief.

The defendant hired the plaintiff as a transportation clerk typist in 1973.  (Pl. Depo.

at 31).[1] For two or three years after she started working for the defendant, however, the plaintiff performed the duties of a dispatcher, including scheduling and dispatching of primary, secondary and return pick-ups of merchandise. (Pl. Depo. at 31-32; Lux Decl. at Ex. C). After performing dispatcher duties, the plaintiff began performing clerical work. (Pl. Depo. at 31-32, 42-43). For six months afterward, she was classified as a transportation clerk typist; then she was reclassified as a transportation assistant, although her clerical duties did not change. (*Id*. at 42-43, 47). She continued as a transportation assistant until June, 1984, when she became assistant backhaul coordinator, which is her current position. (*Id*. at 33-34). In that capacity, she coordinates the movement of freight into the defendant's stores and exercises non-disciplinary supervision over one employee, the backhaul clerk. (*Id*. at 34, 47-51; Lux Decl. at Ex. A).

In fall of 1995, the plaintiff was called to jury duty for the second year in a row. (Pl. Depo. at 79-80). When she notified her supervisor, Danny Robertson ("Robertson") that she would be absent from work because of jury duty, he expressed disbelief and began to treat her in a hostile manner. (*Id*. at 80, 85-86). The plaintiff complained to Robertson's supervisor, Howard White ("White"), who counseled Robertson about the defendant's jury duty policy and had the Human Resources Director, Paula Garmo, talk to Robertson about it. (*Id*. at 87). The same day, the plaintiff also complained to the Calhoun County Circuit Clerk's staff and to Circuit Judge Samuel Monk about Robertson's behavior. (Pl. Depo. at

---

[1]Excerpts from the plaintiff's deposition are included in the Submission of Record Evidence in Support of Defendant's Motion for Summary Judgment and in the Submission of Record Evidence in Support of Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment.

2

87). In response, White told the plaintiff that he and Garmo would talk to Robertson again. (*Id*. at 88-89; White Depo. at 36-38).

The week after her jury duty, the plaintiff complained to White that Robertson was hostile to her when she told him she was sick and needed to leave. (Pl. Depo. at 97-99). White told the plaintiff to go ahead and leave for the day and that he would handle Robertson. (*Id*. at 98).

Near the end of 1995, the plaintiff learned from Robertson that two vacation practices previously used in their department were changing. (Pl. Depo. at 131). Instead of choosing vacation by seniority, which allowed the plaintiff her first choice of vacation time, even over Robertson, the plaintiff and her co-worker in the department were required to submit their vacation requests to Robertson for approval. (*Id*. at 116, 118-19, 128). Also, the practice of "banking" holidays (those holidays that the employee had worked) and carrying them to the next year was ended, requiring the employee to use those banked holidays within the year. (*Id*. at 130-31). The plaintiff acknowledged that her fellow superintendents also became subject to this change at or near then end of 1995. (*Id*. at 133).

When the plaintiff and Robertson disagreed about these new vacation practices, White's supervisor, Russ Woodward ("Woodward") met with Garmo, Robertson and the plaintiff to help resolve the conflict between the plaintiff and Robertson. (Pl. Depo. at 114-16, 118). During the meeting, Woodward suggested that Robertson and the plaintiff take turns selecting vacation weeks, with the plaintiff choosing the first week. (*Id*. at 118-19). Plaintiff first rejected this suggestion but agreed to it when Garmo showed her the defendant's policy, which provides that the selection of vacation is within the discretion of

3

the supervisor.  (*Id*. at 119-20).  After the defendant's attempt to resolve the conflict between

Robertson and the plaintiff, the plaintiff was satisfied with the vacation weeks that she chose

but she remained dissatisfied with the method for arriving at those weeks.  (*Id*. at 130).

The plaintiff filed a Charge of Discrimination with the Equal Employment

Opportunity Commission ("EEOC") on January 23, 1996, detailing certain mistreatment she

had suffered at Robertson's hands and alleging that he had created a hostile work

environment for her because of her gender.  She also included allegations that the defendant

"discriminates against women in general" and that she and other women "would make more

money at SuperValu if we were men."  (Charge of Discrimination, Ex. A at 8).[2]  On

December 2, 1996, the EEOC sent the plaintiff her Notice of Right to Sue.  She filed this

action on March 3, 1997.

## SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986).  The party asking for summary judgment "bears the initial burden to show the district

court, by reference to materials on file, that there are no genuine issues of material fact that

should be decided at trial.  Only when that burden has been met does the burden shift to the

---

[2]The plaintiff's charge of discrimination is attached to her complaint.

4

non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); see *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex,* 477 U.S. at 322-23; see FED. R. CIV. P. 56(a) and (b).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings. Id.

After a properly made motion has been properly responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

5

*Anderson*, 477 U.S. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 259; *see Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

6

## DISCUSSION

### A.  Sexual Harassment-Hostile Work Environment Claim

The plaintiff claims that she was subjected to a hostile work environment due to her gender. She argues that she has suffered "severe and constant gender harassment" from Robertson and that the management of the defendant knew about this harassment and permitted it to occur.

The plaintiff complains that she and Robertson have had a strained relationship since 1993. (Memorandum in Opposition to Defendant's Motion for Summary Judgment at 10-11; Pl. Depo. at 79). The plaintiff presented evidence that Robertson generally "talks down" to her and to other female employees and that he tries to avoid contact with females in the workplace. (Pl. Depo. at 136; Barker Depo. at 32-33; Aderholt Depo. at 35-36).[3]

The relationship between the plaintiff and Robertson deteriorated when the plaintiff was called for jury duty for the second year in a row in Fall of 1995. (Pl. Depo. at 80). Robertson became angry, wanting to know how the plaintiff had been summoned for jury duty twice in a row and he had never served, even though he was a man. (Pl. Depo. at 80). Robertson acted as if the plaintiff had lied about jury duty, spoke with her in a curt and hostile manner, narrowly observed her, made notations about her conduct and even called

---

[3]White testified that certain female employees complained about Robertson being difficult to work for. (White Depo. at 48). He recalled a comment that "if I was Joe Blow, that wouldn't have happened," but did not identify who had said it or the context in which it was said. (Id). Also, although the plaintiff states that a female employee who had worked in Robertson's department resigned, the employee's testimony is that she did so because she did not think she could meet his expectations and because the environment was different from others in which she had worked (Whitstone Depo. at 14-21). Nothing in that employee's testimony shows that she resigned due to any discriminatory animus on Robertson's part.

7

the defendant's home office in a futile attempt to get her fired. (White Depo. at 38-40; Aderholt Depo. at 18-19; Pl. Depo. at 89-91). When the plaintiff developed chest pains the week after her jury duty and told Robertson that she was sick and needed to leave, Robertson became irritated and spoke to her in a hostile manner, although he did not forbid her from leaving or deny her time off.[4] (White Depo. at 39-40). He also spoke to her in a hostile manner when she returned from the doctor later with written instructions not to work for the rest of the day due to blood clots in her arm.[5] (Pl. Depo. at 96-97). At that time, she volunteered to work the remaining two hours of the afternoon. (Pl. Depo. at 97-98). When she then complained to White about Robertson's behavior, White gave her the rest of the day off and said that he would "take care" of Robertson. (Pl. Depo. at 98).

Around the end of 1995, Robertson told the plaintiff that there would be a change in the vacation scheduling practice previously used in the Backhaul Department, pursuant to which the plaintiff had always gotten her choice of vacation time due to her seniority over Robertson. (Pl. Depo. at 114-20, 128-31). Under the new system, she and another female employee in the department had to submit vacation requests to Robertson for approval. (*Id.* at 128-31, 148-49; Aderholt Depo. at 17). Robertson also told her that she could no longer carry forward or "bank" from year to year credit for the time she had worked on previous

_____

[4]Robertson said, "You are trying to tell me that you are sick and you won't be back today?" (Pl. Depo. at 93). In reply to her affirmative response, he then said, "Well, I hope you know you have put me in a bind today." (*Id.*). Robertson also later commented to the plaintiff that she should better schedule having a heart attack or chest pains. (*Id.* at 147).

[5]Robertson stated, "You mean to tell me that you are not going to be able to work today or anything?" (Pl. Depo. at 97). He also stated that he had plans and things he wanted to do. (*Id.*).

8

holidays. (Pl. Depo. at 131). The plaintiff acknowledged, however, that the defendant

began uniformly applying this policy to its supervisors at about the same time that Robertson

told her about it. (*Id.* at 133). Although several managers met with the Robertson and the

plaintiff to help them resolve their disputes about these changes, the plaintiff remained

dissatisfied that she was no longer able to choose her vacation time based upon seniority. (*Id.*

at 130).

The plaintiff argues that the evidence supports her claim that she was subjected to a

hostile work environment because of her gender. In discussing such claims, the Eleventh

Circuit has stated as follows:

> The elements of a Title VII sexual harassment claim are the following: (1) the
> employee must belong to a protected group; (2) the employee must have been
> subject to unwelcome sexual harassment; (3) the harassment must have been
> based on sex; (4) the harassment must have been sufficiently severe or
> pervasive to alter the terms and conditions of employment; and (5) there must
> be a basis for holding the employer liable for the harassment either directly or
> indirectly. *See Henson v. City of Dundee*, 682 F.2d 897, 903-05 (11th
> Cir.1982). Whether an employee can satisfy his or her burden of showing that
> the work environment is hostile or abusive is a fact-specific question, requiring
> analysis of all the circumstances. *Harris*, 510 U.S. at 23, 114 S. Ct. 367.

*Mendoza v. Borden, Inc.,* 158 F.3d 1171, 1175 (11th Cir. 1998).

It is apparent that the plaintiff's allegations do not contain the five required elements

of a sexual harassment claim set forth in *Mendoza*. The plaintiff is a member of a protected

group, so she does meet the first *Mendoza* requirement.

In order to meet the second *Mendoza* requirement, the complained-of behavior would

have to constitute "harassment," meaning that it "must be unwelcome in the sense that the

employee did not solicit or incite it, and in the sense that the employee regarded the conduct

9

as undesirable or offensive." *Henson*, 682 F.2d at 903; *see also*, 29 C.F.R. § 1604-11(a).

Here, the plaintiff asserts that, on occasion, Robertson treated her in an oppressive and

disagreeable manner and once even attempted to terminate her employment. She asserts that

he changed the status quo with respect to vacation choices and "banking" of vacation time

from one year to the next. The court doubts that some of this behavior, particularly the

changes in vacation practices, could be reasonably called "harassment."[6] Assuming that all

the complained-of behavior is harassment, however, the only evidence that such behavior was

based upon sex (thereby allowing plaintiff to meet the third *Mendoza* requirement) is

Robertson's query as to how the plaintiff had been called twice to jury duty while he had not

been called, although he was a man; White's testimony that a female employee told him that

if she had been "Joe Blow," she would not have had some unspecified difficulty with

Robertson; and the testimony that Robertson "talked down" to women and avoided them in

the workplace.[7] The court is not convinced that such evidence is sufficient to satisfy the

_____

[6]The plaintiff testified that no supervisors have been able to "bank" vacation time since
the end of 1995, when she was told that she no longer could do so. (Pl. Depo. at 133). With
respect to the change in the plaintiff's department from choosing vacation on the basis of
seniority to choosing it at the discretion of the supervisor, the evidence showed that this is
consistent with company rules. (Pl. Depo. at 119). Although there was testimony that
supervisors in the workplace customarily chose vacation by seniority, the details of this
process and whether the vacation choices were subject to any sort of approval are not apparent
from the evidence. (Barker Depo. at 38). In any event, the court notes that the plaintiff
testified that she was satisfied with her vacation schedule in spite of her dissatisfaction with the
method by which it is determined. (Pl. Depo. at 130).

[7]The plaintiff offers the testimony of her co-worker, Hershel Barker, who stated that
Robertson appears to avoid contact with women in the workplace and seems to prefer the
company of men. (Barker Depo. at 33-34). Such general and speculative observations do not
show, however, that Robertson's behavior to the plaintiff was based upon her sex.

10

requirement that the purported harassment was based upon sex, meaning that "but for the fact of her sex, she would not have been the object of harassment." *Henson,* 682 F.2d at 904. Even assuming that the evidence is sufficient to meet the third *Mendoza* requirement, however, the complained-of behavior does not meet the fourth *Mendoza* element because it was not "sufficiently severe or pervasive to alter the terms and conditions of employment." *Oncale*, 118 S. Ct. at 1001.

The Supreme Court recently discussed the "sufficiently severe or pervasive" element, stating as follows:

> So, in *Harris*, we explained that in order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. 510 U.S., at 21-22, 114 S. Ct., at 370-371. We directed courts to determine whether an environment is sufficiently hostile or abusive by "looking at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*, at 23, 114 S. Ct., at 371. . . . We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the Courts of Appeals have heeded this view. *See, e.g., Carrero v. New York City Housing Auth.*, 890 F.2d 569, 577-578 (C.A.2 1989); *Moylan v. Maries County*, 792 F.2d 746, 749-750 (C.A.8 1986); See also 1 Lindemann & Grossman 805-807, n. 290 (collecting cases granting summary judgment for employers because the alleged harassment was not actionably severe or pervasive).

*Faragher v. City of Boca Raton,* --- U.S. ---, 118 S. Ct. 2275, 2283-84 (1998).

The plaintiff's hostile work environment claims fail to meet the fourth *Mendoza* requirement because, while she may have subjectively found the environment so hostile and abusive that it changed the terms and conditions of her employment, an examination of the circumstances set forth in *Harris* and cited in *Faragher* reveals that a reasonable person

11

would not have so perceived it.

The plaintiff's harassment claims are limited only to Robertson's conduct. (Pl. Depo. at 76). According to the plaintiff, other than his general tendency to "talk down" to women, Robertson primarily mistreated her in relation to two different issues–vacation time and jury duty. The evidence tends to show that Robertson's alleged mistreatment of the plaintiff as to both these issues was confined to a limited period of time. The alleged harassment thus appears not to have been frequent. Neither was it severe, except arguably in the jury duty dispute, which was an isolated incident of relatively limited duration and during which Robertson was counseled by his superiors, who repudiated his actions and instructed him to allow the plaintiff time off for jury duty. (White Depo. at 37-38; Pl. Depo. at 86-87). Robertson's supervisor also supported the plaintiff when she complained about the way Robertson treated her when she became ill the week after her jury duty. The alleged harassment by Robertson was not physically threatening or humiliating and it did not unreasonably interfere with the plaintiff's work performance. On the contrary, White testified that the plaintiff is an excellent employee. (White Depo. at 72). Employee Hershel Barker, who had daily contact with the plaintiff at the workplace, testified that she did an excellent job and that he preferred to work with her, rather than with Robertson, because she did her work in a more timely manner. (Barker Depo. at 31-32, 36). The plaintiff's hostile work environment claims therefore fail to meet the fourth *Mendoza* requirement. Thus, even if the claims meet the other *Mendoza* requirements, they still must fail.

12

## B.    Disparate Pay

The plaintiff asserts a disparate pay claim under Title VII based upon her gender.[8]  In

a Title VII discrimination case such as this, where the claims are premised upon

circumstantial evidence of discrimination, the plaintiff has the initial burden of establishing a

prima facie case of discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802,

93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973); *Texas Department of Community Affairs v.*

*Burdine*, 450 U.S. 248, 253-54 & n.6, 101 S. Ct. 1089, 1094 & n.6, 67 L. Ed. 2d 207 &

n.6;  *Combs v. Plantation Patterns,* 106 F.3d 1519, 1527-28 (11th Cir. 1997)*, cert. denied*,

--- U.S. ----, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1997).  Once the plaintiff establishes a

prima facie case, a legal presumption of unlawful discrimination arises and the burden shifts

to the defendant employer to articulate a legitimate, nondiscriminatory reason for the

challenged employment action.  *McDonnell Douglas*, 411 U.S. at 802;  *Burdine*, 450 U.S. at

254; *Combs*, 106 F.3d at 1528.  "To satisfy that burden of production, '[t]he

defendant need not persuade the court that it was actually motivated by the proffered

reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to

whether it discriminated against the plaintiff.'"  *Combs*, 106 F.3d at 1528 (quoting *Burdine*,

450 U.S. at 254-55, 101 S. Ct. at 1094).

Once the employer meets its burden of production, "[t]he presumption, having

---

[8]The plaintiff apparently attempts to raise, for the first time, a claim under the Equal
Pay Act in her Memorandum in Opposition to Defendant's Motion for Summary Judgment.
Under the *Federal Rules of Civil Procedure*, however, a brief is not the proper vehicle for
asserting additional claims or amending a complaint.  The purported Equal Pay Act claim is
therefore not before the court.

fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture," *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510-11, 113 S. Ct. 2742, 2749, 125 L. Ed. 2d 407 (1993); *see also Burdine*, 450 U.S. at 255 & n.10, leaving the elements of the prima facie case. *Combs*, 106 F.3d at 1528. When those elements are accompanied by evidence of pretext or disbelief of the defendant's proffered explanation, they may permit, in some instances, a finding for the plaintiff. *Id*. at 1529; *see also Hicks*, 509 U.S. at 511, *Evans v. McClain of Georgia*, 131 F.3d 957, 963 (11th Cir. 1997). The plaintiff, however, always retains the ultimate burden of proving that he was the victim of intentional discrimination. *Hicks*, 509 U.S. at 508; *Burdine*, 450 U.S. at 253.

To establish a prima facie disparate pay case under Title VII, the plaintiff must establish "that she occupies a job similar to that of higher paid males." *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994). Here, the plaintiff alleges that, when she served as a dispatcher from 1973 to approximately 1976, she was paid less than the males who performed the same or similar work. Nearly twenty years passed before the plaintiff filed her Charge of Discrimination in January 1996.

Title VII permits an employee to seek relief in federal court only where the plaintiff (1) has filed timely charges with the EEOC and (2) has received and acted upon the EEOC's statutory notice of right-to-sue. See § 42 U.S.C. 2000e-5(e); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). The plaintiff is required to file a charge of discrimination with the EEOC within 180 days of the alleged discrimination. See § 42 U.S.C. 2000e-5(e). If the plaintiff fails to file before this time elapses, the plaintiff's claim is untimely and is therefore procedurally barred for failure to

14

exhaust her administrative remedies. *See Delaware State College v. Ricks*, 449 U.S. 250,

256, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980). This disparate pay claim, which is based

upon events occurring almost twenty years before the plaintiff filed her charge of

discrimination, is thus time-barred.[9]

The plaintiff next alleges that, although her current position is titled "Assistant

Backhaul Coordinator," the functions she performs are similar to those of a dispatcher. She

therefore claims that her pay should be comparable to that of dispatchers and should have

been since she took the position in June 1984. As evidence, she points out that she was paid

less than a dispatcher named Mickey Miller every year from 1987 to 1995. (Memorandum in

Opposition to Defendant's Motion for Summary Judgment at 16-18).

Assuming that the plaintiff has met the "exceedingly light" burden of proving a prima

facie disparate pay case under Title VII, *Meeks*, 15 F.3d at 1019 , the burden shifts to the

defendant to articulate a legitimate, nondiscriminatory reason for the disparity in pay.

*McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 254; *Combs*, 106 F.3d at 1528.

The legitimate, non-discriminatory reason offered by the defendant for the disparity in pay is

that the pay range for each of the positions is set by a neutral, objective pay scale called the

"Hay Point Rating System" and that increases in pay are based upon a merit system that

allows for larger pay increases for employees at the lower end of the pay range for any

position. Under the Hay Point Rating System, each exempt employee position is assigned a

---

[9]The plaintiff has not alleged a "continuing violation" capable of sustaining her pay
claim with respect to the period in which she worked as a dispatcher, nor does it appear that
the evidence would support such an allegation.

15

certain number of "hay points" based upon an evaluation of the level of know-how, problem-solving and accountability required by the duties and responsibilities of the position, and each hay point is assigned a monetary value.[10]   (Lux Declaration at ¶¶ 5-6).  The number of hay points assigned to any position does not change unless the level of job responsibility and accountability changes, at which time the position is reevaluated under the Hay system.  (*Id.* at ¶ 6).  The midpoint of a given position's salary range is the sum of the total monetary value of the position's hay points and the base salary amount for all exempt employees. (*Id.*).  The salary range for each exempt employee spans from 80% to 120% of his or her position's midrange amount.  (*Id.*).  Within that range, an employee's salary can vary depending on his or her annual pay raises, which are based upon his or her annual performance review rating and upon the proximity of the employee's salary to the position's midpoint.  (*Id.* at ¶ 7).  An employee earning 80-93% of the midpoint is able to earn a larger percentage increase than an employee earning 94-106% of the midpoint, who, in turn, is eligible for a larger percentage increase than someone earning 107-120% of the midpoint. (*Id.* at Ex. E).

The position of Assistant Backhaul Coordinator is set at 291 points and the dispatcher position is set at 278 points.  (*Id.* at ¶ 8).  The evidence reflects that the hay points allocated to both positions has remained constant since 1986, before the plaintiff notes that her pay was less than Miller's.  (Wilson Decl. at ¶ 3).  Since Miller's maximum salary potential as a

---

[10]For a more extended explanation of the Hay Point Rating System, see *EEOC v. Sears, Roebuck & Co.*, 628 F. Supp. 1264, 1335-1337 (N.D. Ill. 1986), *aff'd*, 839 F.2d 302 (7th Cir. 1988).

dispatcher was thus consistently lower than was the plaintiff's as an Assistant Backhaul Coordinator, it is evident that his salary has always been significantly higher on the range of pay for a dispatcher than the plaintiff's salary was on the range of pay for an Assistant Backhaul Coordinator. The employee profiles offered by the plaintiff reflect this. Miller's 10/22/1995 profile reflects that his salary was set at 106% of his position's midpoint, and plaintiff's 3/9/97 profile reflects that her salary was set at 96% of her position's midpoint. (Memorandum in Opposition to Defendant's Motion for Summary Judgment at Exs. M, N). There is no evidence tending to show that the difference in where the plaintiff's and Miller's salary fell in their particular pay ranges was due to any illegal discrimination on the part of the defendant. On the contrary, the plaintiff testified that, when she bid on her job, she requested $19,500 in pay, which the defendant gave her. (Pl. Depo. at 77-78). It thus appears that the plaintiff determined her initial location on the pay range of her job. She has not alleged that her annual performance reviews have been inaccurate, unfair or discriminatory. She has not presented any evidence showing how Miller's initial position on the dispatcher pay range was determined.

The plaintiff argues that the legitimate, non-discriminatory reasons cited by the defendant for the pay disparity are pretextual. She questions the method by which the hay points are assigned to positions, arguing that the number of hay points assigned to a given position can be easily manipulated by the title given to the position and the length of time between reevaluations. She alleges that the defendant has manipulated the number of hay points of her position by failing to reevaluate it for twelve years, in contrast to other positions held by men and by assigning it a title that would receive fewer hay points than another title

17

would receive.[11]  She notes that the defendant has documents erroneously reflecting that the title of her position is "Traffic Manager," although the evidence reflects that any such error did not impact her pay.

The plaintiff's pretext arguments are irrelevant to her claim that she should be have been paid the same as Miller.  Her argument is that the defendant manipulated the number of hay points given to different positions (by failing to regularly reevaluate the hay points allocated to her position and by giving the position a title that would warrant fewer hay points) in order to keep her salary lower than male employees such as Miller.[12]  Since her position was allocated more hay points than was the dispatcher position, her arguments do not apply to a comparison between the two positions.  Instead, it is apparent that Miller's salary

---

[11]The evidence reflects, however, that the hay points for both the dispatcher position and the plaintiff's position have not changed since 1986. (Wilson Decl. at ¶ 3).  There is no indication that the defendant has reevaluated hay points for positions held by men in such a manner or frequency as to give male employees a pay advantage over the plaintiff.  The only indication that the plaintiff's job title might affect her pay is White's testimony that a position called "assistant traffic manager" would have more hay points than the assistant backhaul coordinator position. (White Depo. at 51-52).  White states no basis for this testimony.

[12]In her brief, the plaintiff compared her salary only with that of the dispatcher position.  In her deposition she also states that she should be paid the same as all the warehouse supervisors with similar responsibility, although it is not clear which warehouse supervisors she believes has responsibility similar to hers.  Such allegations are too vague and indefinite to sustain analysis.  The court notes that there is a position titled "warehouse supervisor" among the defendant's workforce, which position is allocated 312 hay points, 21 more than the Assistant Backhaul Coordinator position held by the plaintiff.  The evidence reveals that the warehouse supervisor's duties and responsibilities are significantly different from those of the Assistant Backhaul Coordinator, including more supervisory responsibilities. Insofar as the plaintiff intends to maintain a disparate pay claim with respect to the position titled "warehouse supervisor," she has made no showing that the legitimate, non-discriminatory reason for any difference in pay–the Hay Point Rating System and the merit raise system--are pretextual.

18

was set at a higher percentage of his position's midpoint salary than was the plaintiff's.
There is no indication that the method by which Miller's salary came to be and remained set
at a higher percentage of his midpoint salary than was the plaintiff's was a pretext for
discrimination, nor has the plaintiff so argued, apart from her general allegations of
discrimination. The plaintiff's disparate pay claims must therefore fail.

## C.    Failure to Promote

The plaintiff claims that the defendant violated her rights under Title VII when it
failed to promote her to the following positions: Transportation Manager in 1997, SERF
Transportation Superintendent in 1995 and a position in Atlanta in approximately 1992. The
defendant argues that plaintiff's claims fail because she did not exhaust her administrative
remedies with respect to her failure to promote claims.

As is set forth in the discussion of the plaintiff's disparate pay claims, Title VII
requires employees to file a charge of discrimination with the EEOC within 180 days of the
alleged discrimination as a prerequisite to filing suit. See § 42 U.S.C. 2000e-5(e).
*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S. Ct. 1817, 36 L. Ed. 2d 668
(1973). If the plaintiff fails to meet this prerequisite, her claim is procedurally barred due to
her failure to exhaust administrative remedies. *See Delaware State College v. Ricks*, 449
U.S. 250, 256, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980).

The defendant argues that, since the plaintiff did not allege in her EEOC Charge of
Discrimination or the affidavit attached thereto that the defendant wrongly failed to promote
her, that she has failed to meet the requirements of Title VII with respect to any failure to

19

promote claims. The plaintiff counters that, because she has challenged the defendant's

promotion system by alleging that she was denied promotions and was discouraged from

applying for positions, that she should therefore be relieved of the consequences of omitting

her failure to promote claims in her Charge of Discrimination. The cases she cites do not

support her argument. *See Cox v. American Cast Iron Pipe Co.*, 585 F. Supp. 1143 (N.D.

Ala. 1984)[13], *reversed in part and vacated in part*, 784 F.2d 1546 (11th Cir. 1986), *cert.*

*denied*, 479 U.S. 883, 107 S. Ct. 274, 93 L. Ed. 2d 250 (1986); *Fisher v. Proctor &*

*Gamble Manufacturing Co.*, 613 F.2d 527 (5th Cir. 1980), *cert. denied*, 449 U.S. 1115, 101

S. Ct. 929, 66 L. Ed. 2d 845 (1981), *United Airlines v. Evans*, 431 U.S. 553, 97 S. Ct.

1885, 52 L. Ed. 2d 571 (1977).

Although the scope of a plaintiff's Title VII complaint is limited not by the precise

claims set forth in her EEOC Charge, but by the "scope of the EEOC investigation which can

reasonably be expected to grow out of the charge of discrimination," *Mulhall v. Advance*

*Security, Inc.*, 19 F. 3d 586, 589 n. 8 (11th Cir. 1994), *cert. denied,* 115 S. Ct. 298 (1994),

this does not salvage the plaintiff's failure to promote claims. As the *Mulhall* court found, an

EEOC charge listing complaints of unequal pay does not "trigger an inquiry into defendant's

promotion practices." *Mulhall*, 19 F.3d at 589 n.8. *See also Alexander v. Gardner-Denver*

---

[13]The plaintiff argues that this case stands for the proposition that "an employer's active
discouragement of an employee's formal application for promotion may excuse a plaintiff's
failure to file an EEOC charge." *Cox* does not stand for this proposition. Rather, the court
there chose to ignore the absence of "EEOC prerequisites," among other things, as to certain
individual plaintiffs who had been members of a class the court decertified. *Cox*, 585 F.
Supp. at 1158. The court's rationale for so doing does not appear to be premised on any
particular conduct by the defendant in discouraging job applicants.

*Co.*, 415 U.S. 36, 47 (1974). A complaint of sexual harassment would be even less likely to trigger such an inquiry. The plaintiff has thus failed to meet the statutory prerequisites for filing her Title VII failure to promote claims because she did not exhaust her administrative remedies with respect to those claims. Her Title VII failure to promote claims must therefore fail.[14]

## CONCLUSION

Plaintiff's evidence does not raise any genuine issue of material fact regarding the claims set forth in her Complaint. Accordingly, defendants' motion for summary judgment is due to be granted. An order granting defendants' motion for summary judgment will be entered contemporaneously herewith.

DONE this 23rd day of February, 1999.

John Ott

JOHN E. OTT
United States Magistrate Judge

---

[14]Several of the plaintiff's factual allegations relate primarily to this barred claim. The plaintiff alleges, for instance, that the defendant did not invite, encourage or arrange for her and other female employees to attend management training seminars used by the defendant to groom employees for promotion and advancement. (Pl. Depo. at 111-13) . The plaintiff also emphasizes that White testified that he thought female employees were treated differently in that "there was less of an urgency to get the females like in the meetings. Let's get these guys in here, and sometimes the females weren't included." (White Depo. at 58). White stated that the female employees should have been included. (*Id.*). The significance of these facts to the plaintiff's case is undercut by the court's finding that her failure to promote claim is time-barred. Even considering these factual allegations in the context of the plaintiff's other claims, they contain nothing that would change the court's conclusion as to those claims.